UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                    :

NATIONAL CASUALTY COMPANY,     :      06 Civ. 784 (RJH)
                                      :

               Plaintiff,     :

                                      :      **MEMORANDUM**
        - against -          :   **OPINION AND ORDER**

                                      :

VIGILANT INSURANCE COMPANY,    :

                                      :

              Defendant.    :

                                      :
-------------------------------------------------------------x

       Defendant Vigilant Insurance Company ("Vigilant") brings this motion under Rule

12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint filed by

plaintiff National Casualty Company ("National") in its entirety.  In its amended complaint,

National alleges five separate causes of action: contribution, subrogation, breach of contract,

unjust enrichment, and breach of agreement.  For the reasons stated below, this Court grants

Vigilant's motion in part and denies it in part.

## BACKGROUND

       This dispute relates to the relative obligations of plaintiff National and defendant Vigilant

under separate insurance policies with Source Enterprises, Inc. ("The Source") to provide a

defense or pay defense costs to The Source and two of its officers in connection with a copyright

action.  On December 15, 2003, Shady Records, Inc. sued The Source, David Mays, and

Raymond Scott in an action captioned *Shady Records, Inc. v. Source Enterprises., Inc.*, No. 03

Civ. 9944 (GEL) (S.D.N.Y.) (the "*Shady* litigation").  Shady Records alleged that defendants

violated federal copyright law and sought injunctive and monetary relief.  (Am. Compl. Ex. C.)
As an alternative to the copyright claims, plaintiff also alleged that defendants were unjustly
enriched at its expense.  (*Id.*)  The action terminated with the dismissal of all of Shady Records'
claims against the Source with prejudice in March 2005, with no damages having been paid.
*Shady Records, Inc. v. Source Enters., Inc.*, 371 F. Supp. 2d 394, 395 (S.D.N.Y. 2005).

Both parties to this action had insurance policies to provide a defense to The Source,
David Mays, and Raymond Scott (the "insureds").  National's policy, issued on January 15,
2003, covered, inter alia, publishing and advertising liability.  (Am. Compl. Ex. A.)  The policy
provided that the insureds would employ counsel, approved by National, for which they would
be reimbursed.  Pursuant to this policy, The Source retained Thelen, Reid & Priest, L.L.P.
("Thelen Reid") to defend it and its officers in the *Shady* litigation and National paid
$1,159,113.02 in fees and expenses for this defense.  (Am. Compl. ¶¶ 24–25.)  Vigilant's policy,
issued on May 1, 2003, covered directors' and officers' liability and provided that Vigilant
would defend and retain counsel for defense of its insureds.  (Am. Compl. Ex. B.)  While The
Source was also a named insured, the Vigilant policy contained an exclusion that denied
coverage for "any Insured Organization Claim . . . based upon, arising from, or in consequence
of any actual or alleged infringement of copyright."  (*Id.*, Directors & Officers Liability
Coverage, III(D)(7).)  Based on this clause, Vigilant declined to defend The Source in the *Shady*
litigation.  However, Vigilant maintains that it provided for the defense of Mays and Scott by
retaining The McMillan Firm.[1]  (Mem. of Law in Opp. 4.)

---

[1] Although the fact that Vigilant hired The McMillan Firm is not contained in the amended complaint, it is a matter
of public record; both The McMillan Firm and Thelen Reid are listed as the attorneys of record in the *Shady*
litigation.  Therefore, this Court can take judicial notice of the fact that Vigilant at least retained The McMillan Firm
as counsel for Mays and Scott.  *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts
routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the
other litigation, but rather to establish the fact of such litigation and related filings.").  As the Court discusses in

Arguing that it paid more than its share of the defense costs, National wrote to Vigilant seeking contribution for the amount it paid to defend the insureds.  With respect to defense of The Source, National claimed that Vigilant improperly refused to provide any defense.  With respect to the defense of Mays and Scott, National claimed that Vigilant had not contributed a sufficient amount to the defense costs.  After Vigilant repeatedly refused to contribute, National brought this action on February 2, 2006.  (Am. Compl. ¶¶ 30–35.)  National's amended complaint contains five separate causes of action:  (1) breach of contract as a third-party beneficiary; (2) subrogation; (3) breach of oral agreement; (4) unjust enrichment; and (5) contribution.  On June 8, 2006, Vigilant moved to dismiss the amended complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

In a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995) (citations omitted).  "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *accord Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  In other words, "the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence

more detail below, however, taking judicial notice that Vigilant retained counsel is not the same as finding that it fulfilled its duty to its insureds.

which might be offered in support thereof." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

While a Court ruling on a motion to dismiss is normally confined to the complaint, it may also consider "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).  The Court may therefore consider the insurance policies issued by National and Vigilant, and the amended complaint in the *Shady* litigation, as these document are attached to National's amended complaint.

## DISCUSSION

Vigilant's Rule 12(b)(6) motion is premised on the contentions that (1) it was not obligated to provide a defense to The Source and (2) it fully met its obligations to provide for the defense of Mays and Scott.  The Court addresses each issue in turn, finding that Vigilant was contractually obligated to defend The Source and, further, that whether Vigilant fully met its obligations to provide a defense of Mays and Scott raises questions of fact not appropriately addressed in a motion to dismiss.

### 1.    Did Vigilant Have a Legal Duty to Defend the Source?

Vigilant argues that the terms of its policy plainly exclude The Source from coverage in the *Shady* litigation and it therefore had no duty to indemnify or defend.[2]  (Mem. of Law in Opp.

---

[2] Vigilant seeks to bolster this argument by pointing out that The Source did not contest Vigilant's denial of coverage based on the copyright exclusion.  First, the absence of a challenge by The Source to being excluded from coverage is not part of the amended complaint or any attached exhibits and therefore may not be properly considered in this motion to dismiss.  In any event, the fact that the Source did not contest Vigilant's denial does not necessarily mean anything, given that National was already defending the Source.  *See Zurich-Am. Ins. Cos. v. Atl. Mut. Ins. Cos.*, 531 N.Y.S.2d 911, 916 (App. Div. 1988) (finding "irrelevant" argument that insureds did not make request of

4.)  National contends that Vigilant improperly denied coverage to The Source, arguing that the *Shady* litigation involved a claim for unjust enrichment not excluded from Vigilant's policy, thus requiring Vigilant to defend the entire action.  In a diversity action such as this one, a court must apply the substantive law of New York State.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Under New York state law, the scope of the duty to defend is a question for the court, upon reviewing the terms of the policy and the underlying complaint.  *See Technicon Elecs. Corp. v. Am. Home Assurance Co.,* 542 N.E.2d 1048, 1050 (N.Y. 1989).  In the present case, neither party suggests that there are additional facts relevant to determination of the duty to defend.  Therefore, the Court will endeavor to determine, as a matter of law at this stage of the proceeding, whether Vigilant had a duty to defend The Source in the *Shady* litigation.

Vigilant bears a heavy burden in seeking to avoid its duty to defend the insureds.  To successfully do so under New York law, an insurer must demonstrate "that the allegations of the [underlying] complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify under any policy provision."  *Frontier Insulation Contractors v. Merchs. Mut. Ins. Co.*, 690 N.E.2d 866, 868–69 (N.Y. 1997) (citing *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 609 N.E.2d 506, 512 (N.Y. 1993)); *see also City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149 (2d Cir. 1989) ("A court applying New York law . . . should only excuse an insurer from its duty to defend if it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to indemnify the insured." (citing *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 476 N.E.2d 640, 641 (N.Y. 1985))); *Frontier Insulation*, 690 N.E.2d

---

one co-insurer to provide defense because another co-insurer "has already assumed their defense under the terms of the policy it issued"), *aff'd*, 539 N.E.2d 1098 (N.Y. 1989).

at 869 ("If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." (citing *Seaboard Sur. Co.* v. *Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984))); *Ruder & Finn, Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 521 (N.Y. 1981) ("The duty to defend . . . includes the defense of those actions in which alternative grounds are asserted, even if some are without the protection purchased." (citing *Int'l Paper Co. v. Cont'l Cas. Co.*, 320 N.E.2d 619, 621 (N.Y. 1974))).

Therefore, if any of the claims asserted in the *Shady* litigation even arguably fall outside the policy exclusion relied on by Vigilant, Vigilant had a duty to defend The Source in the entire action.  Vigilant's policy excludes any claims "based upon, arising from, or in consequence of any actual or alleged infringement of copyright."[3]  (Am. Compl. Ex. B, Directors & Officers Liability Coverage, III(D)(7).)  New York courts have found, at least in the context of certain exclusions, these phrases to be unambiguous and comprehensive.  *See N.H. Ins. Co. v. Jefferson Ins. Co.*, 624 N.Y.S.2d 392, 396 (App. Div. 1995).  In evaluating whether such language covers a particular claim, the Court is to conduct a "but for" analysis: if no cause of action would exist but for the excluded activity, the claim is "based on" the excluded activity and the exclusion applies. *See Mount Vernon Fire Ins. Co. v. Creative Hous., Ltd.*, 668 N.E.2d 404, 405 (N.Y. 1996) (finding that insurer had no duty to defend against claim for negligent failure to maintain safe premises based on assault where policy contained exclusion for assault claims).  Applying this analysis to the instant case, if the unjust enrichment claim in the *Shady* litigation would not exist "but for" an underlying act of copyright infringement, Vigilant had no duty to defend The Source.  The unjust enrichment claim in the amended complaint in the *Shady* litigation states:

---

[3] The Court is also informed by the canon that exclusionary clauses are strictly construed to give the interpretation most beneficial to the insured.  *See Nat'l Screen Serv. Corp. v. U.S. Fid. & Guar. Co.*, 364 F.2d 275, 279 (2d Cir. 1966); *Seaboard Sur. Co.*, 476 N.E.2d at 272.  A construction favorable to the insurer will be sustained only if it is the "only construction which may fairly be placed on the [words used]."  *Vargas v. Ins. Co. of N. Am.*, 651 F.2d 838, 839 (2d Cir. 1981).

> In the event the court allows Defendants to exploit the
> Compositions or Recordings, either by releasing the Illegal CD or
> by continuing to distribute the Unauthorized Copies through its
> web site, Plaintiff has conferred a benefit upon Defendants . . . ,
> Defendants have retained such benefit without adequately
> compensating Plaintiff therefore . . . , [and] Defendants have been
> unjustly enriched.

(Am. Compl. Ex. C  78–81.)  Critically, this claim was plead in the alternative, only to the extent that defendants' acts were found not to infringe the copyright laws.  By definition, then, the unjust enrichment claim is *not* predicated on copyright infringement; indeed, it is precisely the opposite.  That is, if defendants were to be found liable for copyright infringement, the unjust enrichment claim would fail by its own terms.  Since there is obviously no "but for" relationship between the two claims, the unjust enrichment claim does not fall within Vigilant's exclusion clause.

Vigilant argues that Shady Records' unjustment enrichment claim could not be proven without first proving an act of copyright infringement and, therefore, that the "but for" test is met.  (Reply 3.)  But this argument confuses the acts underlying a copyright and an unjust enrichment claim, which may be common, with the claims themselves, which are not dependent one upon the other.  It cannot be said that an unjust enrichment claim "arises" out of copyright infringement any more than infringement "arises" out of unjust enrichment.  Rather, they are alternative claims arising out of the misuse or misapplication of another's property.  Had Vigilant wished to broadly exclude all such inequitable activity, it could have crafted an exclusion based on broad underlying acts, not a specific legal claim.  As drafted, however, the clause excludes only claims based on copyright infringement and, therefore, does not exclude a claim asserted as an equitable alternative to copyright infringement.  That such an alternative claim may be subject to early dismissal is beside the point.  Vigilant had a duty to defend even if the claim, pleading unjust enrichment in the alternative, was "groundless, false or baseless."

*Ruder & Finn, Inc.*, 422 N.E.2d at 521.  Had Vigilant assumed the defense and successfully moved to dismiss the unjust enrichment claim, it would have then been free to decline further coverage.[4]

**2.      Did Vigilant Meet Its Obligations to Defend Mays and Scott?**

Vigilant asserts that it met its obligations to Mays and Scott by retaining and paying the McMillan Firm.  National argues that, despite this conclusory assertion, the Court may not find that Vigilant satisfied its obligations as a matter of law, due to unresolved factual disputes such as the involvement of the McMillan Firm in the defense and how much Vigilant paid the McMillan Firm.  An "insurer does not satisfy its duty to defend merely by designating independent counsel to defend the litigation" when an insured is sued.  *Feliberty v. Damon*, 527 N.E.2d 261, 263 (N.Y. 1988).  Rather, it is a fact-based inquiry.  Even taking judicial notice of Vigilant's hiring of the McMillan Firm, the Court cannot conclude that Vigilant satisfied its obligations to defend Mays and Scott.  Whether Vigilant fulfilled of its duty to defend remains an open question of fact, and National "is entitled to offer evidence to support [its] claims." *Rapoport v. Asia Elec. Holding Co.*, 88 F. Supp. 2d 179, 183 (S.D.N.Y. 2000) (quoting *Scheuer*, 416 U.S. at 236).

---

[4] Courts in this circuit have held that the claim of unjust enrichment is preempted under the Copyright Act because it seeks to vindicate legal and equitable rights equivalent to those already protected under copyright law.  *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306–307 (2d Cir. 2004); *Brown v. Perdue*, No. 04 Civ. 7417 (GBD), 2005 U.S. Dist. LEXIS 15995, 2005 WL 1863673, at *13 (S.D.N.Y. Aug. 4, 2005); *Kunycia v. Melville Realty Co.*, 755 F. Supp. 566, 577 (S.D.N.Y. 1990); *Strauss v. Hearst Corp.*, No. 85 Civ. 10017 (CSH), 1988 U.S. Dist. LEXIS 1427, 1988 WL 18932, at *9–*10 (S.D.N.Y. Feb. 19, 1988).  However, the fact that the unjust enrichment claim in the *Shady* litigation would likely have been preempted does not absolve Vigilant's duty to defend The Source.  *See Ruder & Finn, Inc.*, 422 N.E.2d at 521 (insurer must come forward to defend even if claim is "groundless, false or baseless").

3.      **National's Claims**

Having found that Vigilant had a duty to defend The Source and, further, that National has adequately pled that Vigilant did not fully satisfy its obligation to defend Mays and Scott, the Court turns to the sufficiency of the specific claims alleged in the complaint.

    *a.      Equitable Contribution*

National asserts a claim for contribution against Vigilant, alleging that Vigilant failed to pay its "pro rata share" of the defense costs in the *Shady* litigation.  (Am. Compl. ¶¶ 60–66.) New York law recognizes a cause of action for pro rata contribution when a co-insurer pays more than its fair share for a loss covered by multiple insurers.  *See Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 210 (2d Cir. 2000) ("[U]nder New York law, . . . when one party jointly liable on an obligation pays more than its pro rata share, it may compel the co-obligors to contribute their share of the amount paid." (citation omitted)); *Vigilant Ins.*, 626 F. Supp. at 268 ("[W]here two insurance policies provide primary coverage for the same risk, 'each company is obligated to share in the cost of the settlement and the expenses.'" (quoting *Fed. Ins. Co. v. Atl. Nat'l Ins. Co.*, 250 N.E.2d 193, 195 (N.Y. 1969))); *Nat'l Union Fire Ins. Co. v. Hartford Ins. Co.*, 677 N.Y.S.2d 105, 110 (App. Div. 1998) ("Where two or more insurers bind themselves to the same risk and one pays the whole loss, the paying insurer has a right of action against his coinsurers for a ratable portion of the amount paid." (citing *Zurich-Am. Ins. Cos.*, 531 N.Y.S.2d at 916)), *aff'd*, 717 N.E.2d 1077 (N.Y. 1999).  National has alleged that it paid to defend The Source, Mays, and Scott in the *Shady* litigation, that Vigilant is a co-insurer obligated to pay its pro rata share of these costs, and that Vigilant failed and refused to pay the amount it owes. These allegations are sufficient to state a cause of action under New York law for contribution from a co-insurer.

Vigilant argues for dismissal of National's contribution claim on two grounds: (1) National and Vigilant did not insure against the same risk; and (2) Vigilant paid its fair share of the defense costs as required by its policy.  Under the first ground, Vigilant notes that it had a traditional duty to defend, while National was required to reimburse its insured for defense costs accrued by a firm its insured selected and it approved.  To the extent the "same risk" requirement applies at all in the context of defense obligations, it requires only that both policies be triggered by the same underlying lawsuit.  *See NL Indus., Inc. v. Commercial Union Ins., Co.,* 935 F. Supp. 513 (D.N.J. 1996) (despite being triggered by different claims in underlying action, two policies created defense obligations that supported contribution claim) (interpreting New York state law). The cases cited by Vigilant merely establish that the duty to defend is different from the duty to indemnify, not that this difference has any bearing on the "same risk" requirement in a contribution action.  Vigilant further contends that because it only had a duty to defend Scott and Mays, while National additionally had to defend The Source, the policies did not cover the same risk.  Because the Court finds that Vigilant had a duty to defend The Source in the *Shady* litigation, this argument lacks merit.  Even if it did not have such a duty, Vigilant cites no precedent suggesting that the requirement that co-insurers insure against the "same risk" is the same as a requirement that co-insurers insure identical parties.  While insuring different parties might affect the amount of its pro rata share of the total costs, it is not apparent why it should entirely absolve a co-insurer who failed to pay its fair share.

Vigilant also seeks to dismiss National's contribution claim on the grounds that it fulfilled its defense obligations.  As stated above, whether Vigilant satisfied its obligations is a question of fact that is inappropriate for the Court to resolve at this stage.  National properly alleged that Vigilant failed to pay its fair share of the defense costs, and the Court must accept

these allegations as true at the pleading stage.  Finally, Vigilant argues that contribution rights apply only when the insurer seeking contribution paid the *whole loss*.  While some descriptions of the right to contribution reflect that the insurer seeking contribution in that case had paid the "whole loss," *see, e.g.*, *Nat'l Union Fire Ins. Co.*, 677 N.Y.S.2d at 110, no cases actually bar a contribution claim where this is not the case.[5]  Case law is better read as allowing a claim for contribution whenever one co-insurer has paid "more than its fair share."  *See Md. Cas. Co.*, 218 F.3d at 212.  Vigilant's arguments for dismissal of National's contribution claim lack merit; National may proceed on this theory.

      *b.*   <u>Subrogation</u>

      National asserts a claim for subrogation against Vigilant, alleging that it is subrogated to its insureds' right to recover defense costs in the *Shady* litigation that Vigilant failed to pay. (Am. Compl. ¶ 44.)  However, the Second Circuit has specifically rejected the idea that one co-insurer seeking contribution from another co-insurer may bring a subrogation claim.  Because "under New York law . . . consideration of the equities of a claim for subrogation is predicated upon the insurer having satisfied its obligation to an insured who is damaged by a third-party wrongdoer," the Second Circuit explained that co-insurers cannot recover from one another on a subrogation theory because they "are not seeking reimbursement from a third-party wrongdoer." *Md. Cas. Co.*, 218 F.3d at 211; *see also Vigilant Ins. Co. v. Employers Ins. of Wausau*, 626 F. Supp. 262, 268 (S.D.N.Y. 1986) (rejecting argument that insurer becomes subrogee of insured when co-insurer improperly disclaims coverage and explaining that contribution claim governed dispute between both co-insurers); *Am. Dredging Co. v. Fed. Ins. Co.*, 309 F. Supp. 425, 428 (S.D.N.Y. 1970) (explaining that co-insurer cannot recover against other co-insurers based on

---

[5] It is apparent that such a bright line rule would lead to inequitable results.  A co-insurer would be able to escape a contribution claim by paying only a small fraction of the insured's total defense costs.

subrogation principle because "the only right [plaintiff co-insurer] has against the co-insurers is by way of pro rata contribution").[6]  Therefore, the Court dismisses National's subrogation claim.

     *c.*     <u>*Third-Party Beneficiary Claim*</u>

National asserts a claim for breach of contract against Vigilant, alleging that it was an intended beneficiary of the contract between Vigilant and its insureds, and thus it can recover for a breach of that contract.  (Am. Compl ¶¶ 36–42.)  National bases its claim that it is a third-party beneficiary on an "Other Insurance" provision in the Vigilant policy, which provides that should any loss be validly covered under another insurance policy, Vigilant's policy will cover only the amount of loss in excess to that other policy.[7]  (Vigilant Policy, Am. Compl. Ex. B, Directors & Officers Liability Coverage, IX(A).)

Under New York state law, "where the insurance contract does not name, describe, or otherwise refer to the entity or individual seeking the benefit thereof as an insured, there is no obligation to defend or indemnify" the third party.  *State  v. Am. Mfrs. Mut. Ins. Co.*, 593 N.Y.S.2d 885, 886 (App. Div. 1993) (citing *Sanabria v. Am. Home Assurance Co.*, 501 N.E.2d 24, 24–25 (N.Y. 1986)).  At the very least, to be a "third-party beneficiary, the claimant must

---

[6] The Court has found one New York case that described a co-insurer's claim against another co-insurer as a subrogation claim.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hartford Ins. Co. of the Midwest*, 677 N.Y.S.2d 105, 110 (App. Div. 1998) (finding that co-insurer could pursue subrogation claim against another co-insurer for failure to contribute to settlement costs).  To the extent that the law may be unclear in this area, the Court finds the *Maryland Casualty* rationale persuasive in that this type of co-insurer dispute is more properly considered a claim for contribution rather than a subrogation claim because there is no third-party wrongdoer.  Rather, this case is properly conceived as a dispute over whether one insurer properly contributed its fair share of defense costs.

[7] The Court notes that both policies in this case contain such "excess clauses," limiting liability to the excess still required to be paid after other applicable insurance policies have been exhausted.  (Vigilant Policy, Am. Compl. Ex. B, Directors & Officers Liability Coverage, IX(A); National Policy, Am. Compl. Ex. A, V(G).)  As the New York Court of Appeals has explained, "To give effect to the excess clause in either of the policies would defeat the similar provision in the other and it follows, therefore, that the 'excess' clauses operate to cancel out each other . . . ."  *Fed. Ins. Co.*, 250 N.E.2d at 194–95.  Thus, in this case, both parties are required to share in litigation expenses.  *Id.* at 195; *see also State Farm Fire & Cas. Co. v. LiMauro*, 482 N.E.2d 13, 17 (N.Y. 1985) (explaining that in cases where two co-insurers have excess policies, "neither is permitted to argue that the other must bear the entire risk" because if such arguments were permissible, "the effect . . . would be to leave the insured with no coverage at all" (citations omitted)); *Lumberman's Mut. Cas. Co. v. Allstate Ins. Co.*, 417 N.E.2d 66, 68 (N.Y. 1980) ("[W]here there are multiple policies covering the same risk, and each generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance.").

show an intent of the parties to an agreement to benefit the claimant.  If there is no such intent, a claimant is an incidental beneficiary to the contract and has no enforceable rights thereunder." *Benedictine Hosp. v. Hosp. Underwriters Mut. Ins. Co.*, 481 N.Y.S.2d 813, 816 (App. Div. 1984) (citation omitted).  National was never named in Vigilant's policy, nor was it within a class of intended beneficiaries of the policy.  And far from conferring any sort of benefit on National, the "excess clause" relied on by National actually places limits on the coverage required of Vigilant at the expense of other insurers—National in this case.

The relief sought by National under this claim, as with its claim for subrogation, is properly pursued under a claim for contribution.  Indeed, as the Second Circuit has stated:

> Contribution rights, if any, between two or more insurance companies insuring the same event are not based on the law of contracts.  This follows from basic common sense because the contracts entered into are formed between the insurer and the insured, not between two insurance companies.  Accordingly, whatever rights the insurers have against one another do not arise from contractual undertakings.

*Md. Cas. Co.*, 218 F.3d at 210 (emphasis added); *see also U.S. Fire. Ins. Co. v. Am. Home Assurance Co.*, 796 N.Y.S.2d 603, 605 (App. Div. 2005) (upholding dismissal of co-insurer's breach of contract claim against another co-insurer because "[p]laintiff was not in privity with defendant and its insured in the insurance policy, so plaintiff's proper remedy is to seek declaratory judgment for contribution").  Therefore, the Court dismisses National's breach of contract claim.

      *d.*     <u>Unjust Enrichment</u>

National asserts a claim for unjust enrichment against Vigilant, alleging that Vigilant benefited from its expenditure on defense costs but failed to pay its equitable share of those costs.  (Am. Compl. ¶ 57.)  Under New York state law, the basic elements of an unjust enrichment claim are: "1) defendant was enriched; 2) such enrichment was at the expense of the

plaintiff; and 3) the circumstances were such that in equity and good conscience the defendant should make restitution." *Chase Manhattan Bank v. Banque Intra, S.A.*, 274 F. Supp 496, 499 (S.D.N.Y. 1967) (citing *Miller v. Schloss*, 113 N.E. 337 (N.Y. 1916)).  However, applying the broad discretion contained in the third element, courts have imposed various additional requirements such as: services must have been performed for the defendant, *Heller v. Kurz*, 643 N.Y.S.2d 580, 581–82 (App. Div. 1996); services must have been performed at defendant's behest, *Prestige Caterers v. Kaufman*, 736 N.Y.S.2d 335, 336 (App. Div. 2002); or defendant must have assumed an obligation to pay plaintiff for services it received, *LaBarte v. Seneca Res. Corp.*, 285 728 N.Y.S.2d 618, 621–22 (App. Div. 2001).

Here, National's amended complaint does not allege that its defense of its insureds was for Vigilant, that the defense was undertaken at the behest of Vigilant, nor that Vigilant assumed an obligation to pay National for services Vigilant received.  It is apparent that National had a duty to defend its insureds, as required by its policy, whether or not the insureds were also covered by the Vigilant policy.  *See, e.g., Am. Home Assurance Co.*, 796 N.Y.S.2d at 605 ("[W]ith regard to quantum meruit, plaintiff [co-insurer] provided a service to its own insured, not to defendant [co-insurer], so this cause of action cannot stand." (citing *Prestige Caterers*, 736 N.Y.S.2d at 336)).  National's allegations only show that Vigilant received a benefit from its defense of its insured, which is insufficient to support a claim of unjust enrichment.  *See Kagan v. K-Tel Entm't, Inc.*, 568 N.Y.S.2d 756, 757 (App. Div. 1991) ("It is not enough that the defendant received a benefit from the activities of the plaintiff.").[8]

---

[8] Vigilant also argues that National cannot prevail on an unjust enrichment claim because "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."  *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987).  As Vigilant itself concedes in arguing against National's breach of contract claim, its policy spells out Vigilant's obligations to the Source and its employees, and is in no way a contract governing the dispute between National and Vigilant.  Indeed, if taken to its logical conclusion, Vigilant's position would preclude

While, as National points out, the Second Circuit has referred to a situation in which one co-insurer pays more than its share of defense costs as "unjust," *Md. Cas. Co.*, 218 F.3d at 212, this language does not in and of itself create an unjust enrichment claim cognizable under New York state law.  None of the cases National cites in support of its unjust enrichment claim concern insurance law, and this Court has found no cases that permit a claim between co-insurers under a theory of unjust enrichment.  The additional elements required to sustain an unjust enrichment, as is the case here, will rarely be present in such a situation.  Instead, the equitable action for contribution, not requiring these additional elements, is the proper claim under which to pursue such an action.  Therefore, the Court dismisses National's unjust enrichment claim.

       *e.*      <u>Breach of Oral Agreement</u>

National asserts a claim for breach of agreement against Vigilant, alleging that Vigilant orally agreed to contribute to its defense costs but failed to do so.  (Am. Compl. ¶¶ 50–51.) Vigilant argues that the single allegation concerning this purported agreement is too indefinite to sustain the claim on a motion to dismiss, because National has failed to describe who made the agreement, how much it allegedly agreed to contribute, when payment would be due, or when the agreement was made.  While it is axiomatic that an agreement can not be enforced unless it is "reasonably certain in its material terms, the New York Court of Appeals has cautioned that "[b]efore rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear."  *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 548 N.E.2d 203, 206 (N.Y. 1989).

---

contribution claims between co-insurers as well as they also sound in equity and would be barred by the existence of a contract.  *See Md. Cas. Co.*, 218 F.3d at 211.  Thus, Vigilant's argument has no merit.

The Court does not find the absence of allegations in National's amended complaint as to who made the agreement and when to be fatal, although it does raise questions as to whether any agreement was in fact made. More troubling, however, is the absence of any allegations concerning how the parties were to share defense costs under the purported agreement. Even if the Court were to find an agreement, it would be unable to determine whether there was a breach or to calculate the damages without knowing what portion of the defense costs Vigilant agreed to contribute. The only "extrinsic standard" to which the Court could look in answering this question would be equitable principles. As those principles are exactly the same as those governing a claim for contribution, recognizing National's claim for breach of agreement adds nothing to this action. Should subsequent discovery indicate the existence of definite terms, National may move for leave to further amend its complaint. At present, this claim is fatally flawed and will be dismissed.

## CONCLUSION

The Court grants in part and denies in part Vigilant's motion to dismiss National's amended complaint [11]. The Court dismisses the claims for subrogation, breach of contract, unjust enrichment, and breach of agreement. However, National may proceed on its claim for contribution.


SO ORDERED.


Dated: New York, New York
      December 21, 2006

Richard J. Holwell
United States District Judge

16